**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Melvin Lampton, Jr., on behalf of himself and all others similarly situated, | ) ) ) | |
| | ) ) | Demand for Jury Trial |
| | ) | Case No. |
| *Plaintiff,* | ) ) | COMPLAINT – CLASS ACTION |
| v. | ) ) | |
| Saint-Gobain Abrasives, Inc., | ) ) | |
| *Defendant.* | ) | |

## CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL

Comes now Plaintiff Melvin Lampton, Jr., individually and on behalf of all other persons similarly situated, for his complaint for damages against Defendant Saint-Gobain Abrasives, Inc. ("Defendant").

## NATURE OF ACTION

1. This is a class action claim arising from the deceptive business practices of Defendant in the advertising, packaging, and labeling of a bonded abrasive wheel product ("Defective Product")[1] that was manufactured, produced, distributed, and/or sold by Defendant.

---

[1] On information and belief, Defendant manufactures and/or sells at least 20 different types of bonded abrasive wheels under the brand Norton. They all suffer from the same defect: a failure to include a clear expiration label.

2.     During the relevant class period, Defendant sold the Defective Product at multiple retail store locations throughout the state of Missouri and the United States.

3.     During the relevant class period, Defendant sold the Defective Product to Plaintiff and other reasonable consumers without adequate advertising, packaging, and labeling that identified that the abrasive wheel product had a shelf life or expiration date after which the product could not be safely used due to risk that the product may give way, crack, split, explode, and fail if used after its shelf life.

## PARTIES

4.     Plaintiff Melvin Lampton, Jr. is a resident and citizen of the state of Missouri.

5.     Plaintiff brings this action on his own behalf and as a representative of a class of persons who purchased a Defective Product that was manufactured, produced, distributed, and/or sold by Defendant. This matter arises out of negligent acts, errors and omissions, including those for which Defendant is strictly liable, committed by the Defendant against Plaintiff causing Plaintiff and the putative class to suffer economic injury.

6.     Plaintiff brings this action on his own behalf and as a representative of a class of similarly situated persons to recover damages for violations of the Missouri Merchandising Practices Act, Mo. Ann. Stat. §§407.010 *et seq*., among other claims,

2

for economic and injunctive relief against Defendant which manufactured, tested, distributed, promoted and sold the Defective Product.

7.      Plaintiff is a "person" and has purchased one or more of the Defective Products in a "sale" within the last two years, as those terms are defined in §50-623 *et seq.,* R.S.Mo.  At the time the product was purchased, Plaintiff was unaware that the product was defective and that the product was not fit for the ordinary purposes for which the product is used in that, when used as reasonably anticipated, the Defective Product cannot be safely used after its shelf life because it may give way, crack, split, explode, and fail.

8.      Plaintiff, on behalf of himself and the putative class, seek a refund for monies paid as a result of his purchase of the Defective Product, and further seeks injunctive relief, enjoining Defendant from selling the Defective Product without a clear expiration warning and label.

9.      Defendant is incorporated in the state of Wisconsin, has its principal place of business in Eau Claire, Wisconsin, and is registered in the state of Missouri and can be served at CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, MO 65101. Defendant is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Product.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because (1) Plaintiff brings this action on behalf of a class which numbers in the thousands, (2) Plaintiff (Missouri) and Defendant (Wisconsin) are citizens of different states, and (3) the aggregate amount in controversy exceeds $5,000,000. See 28 U.S.C. § 1332(d). Plaintiff is bringing a putative nationwide class that includes all people that purchased a Norton-brand wheel. On information and belief, Defendant has sold millions of wheels over the last five years throughout the United States. Each wheel costs approximately $3.00. Plaintiff is seeking a refund for monies paid plus injunctive relief, and attorney's fees. As a result, the amount in controversy easily exceeds $5,000,000.00 ($3 x 5 million wheels sold over the last five years = $15,000,000).

11.     This Court has personal jurisdiction over Defendant pursuant to §506.500 R.S.Mo. in that Defendant transacts business within the state of Missouri and committed one or more tortious acts within the state of Missouri.

12.     Defendant transacted business and/or committed tortious acts within the state of Missouri. Defendant designs, manufactures, processes, distributes, installs, uses, and/or sells dangerous and/or defective products in Missouri. Defendant placed the Defective Product and dangerous products into the stream of commerce, sold and/or supplied said products for use, used said products, and/or

transacted business and committed tortious acts in Missouri from which Plaintiff's claims arise.

13.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that a substantial part of the events that gave rise to the claims in this case occurred in this District in that the purchase of the Defective Product by Plaintiff took place in Sedalia, Missouri.

14.    Venue is proper in this Division pursuant to Local Rule 3.2 in that Defendant is not a resident of this District and Plaintiff resides in Clinton, Henry County, Missouri.

## FACTUAL ALLEGATIONS

15.    The Defective Product made the subject of this suit, which is manufactured, produced, distributed, and sold by Defendant, is unreasonably dangerous.

16.    Defendant manufactures, produces, distributes and sells at least 20 different types of the Defective Product under the brand Norton. Bonded abrasive wheels, such as here, are used to cut metal and concrete. The wheels are attached to power tools (e.g., angle grinders, chop saws) that spin at speeds in excess of 4,400 RPM to 15,000+ RPM:

5



17. Defendant concealed or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiff, in Defendant's advertising, packaging, labeling or otherwise that these products were defective and that the products are not fit for the ordinary purposes for which the products are used in that if the Defective Product is used after the expiration date it will give way, crack, split, explode and fail.

18. Defendant knew the shelf life of the Defective Product would expire without notice to a reasonable customer and thereby created an unreasonable risk of giving way, cracking, splitting, exploding, failing, and harming customers, yet it failed to warn Plaintiff and all other similarly situated customers about this risk.

6

19.     Industry standards required Defendant to include a clear expiration date on the label. For example, the Health and Safety Executive Committee states in its *Safety in the use of abrasive wheels* handbook the following, "All organic bonded wheels for hand-held applications **will bear a use-by date** of three years from the date of manufacture." (emphasis added).

20.     The Federation of European Producers of Abrasives (FEPA) establishes an industry standard for expiration date or shelf life date for use of three years. United States manufacturers of abrasive wheels recognize FEPA as an industry standard.

21.     Indeed, Defendant admits that its abrasive wheels have a shelf-life. Defendant has publicly stated, "It has always been Saint-Gobain's recommendation that Resinoid Bonded grinding wheels be used up within 2 years from the date of manufacture." But it utterly fails to adequately inform consumers about this material fact.

22.      Defendant had the capability and means to create an alternative label that clearly warned about the expiration date, yet it failed to do so.

23.     On information and belief, Defendants are currently selling abrasive wheels that have already expired. The Defective Products are sold in thousands of retail stores around the country and online. On information and belief, several of these stores continue to sell expired abrasive wheels to customers and/or have expired wheels on Defendants' shelves waiting to be purchased. Thus, the risk of a customer

7

purchasing a worthless expired or nearly expired wheel is imminent and, absent injunctive relief, will continue to occur in the future.

24.    Despite being misled by Defendant's deceptive advertising, packaging, and labeling, Plaintiff wishes to continue purchasing the Defective Product due to, among other considerations, convenience and availability. However, absent injunctive relief to prevent Defendant from selling abrasive wheel products without clear and understandable advertising, packaging and/or labeling in the future, Plaintiff will be unable to rely with confidence on the information provided to ensure that abrasive wheel products purchased from Defendant are not expired or nearly expired at the time of purchase and used prior to expiration. While Plaintiff now has some belief as to a possible meaning of the combination of ambiguous numbers on the face of the Defective Product, he lacks knowledge of Defendant's precise business practices and has doubts regarding how the numbers provided on the Defective Product can be accurately read and interpreted or may be read and interpreted in the future. This uncertainty, in combination with the desire to continue to purchase abrasive wheels from this Defendant in the future constitutes an ongoing injury that can only be remedied through the granting of injunctive relief and preventing Defendant from selling abrasive wheel products without an easily read and understood expiration date located on the face of the product. In addition, other class members will continue to purchase Defendant's Defective Product near to or after the expiration date without knowledge that the product is, or is about to, expire.

Therefore, an award of monetary damages alone will not sufficiently remedy the continuing future harm caused by Defendant's deceptive practices.

<u>**CLASS ACTION ALLEGATIONS**</u>

25. Plaintiff brings this class action pursuant to Rule 23, Federal Rules of Civil Procedure, on behalf of himself and the following class of similarly situated persons: all persons who purchased a bonded abrasive wheel at a Harbor Freight Tools store for personal, family or household use:

    a. A "Nationwide Class" based on claims of unjust enrichment, negligence and/or breach of implied warranty consisting of all customers who purchased any of the Defective Products in the United States within the applicable statute of limitations; or

    b. A "Missouri Sub-Class" based on claims brought under the Missouri Merchandising Practices Act and for unjust enrichment, strict liability design defect, strict liability failure to warn, negligence and/or breach of implied warranty consisting of all persons who purchased any of the Defective Products in the state of Missouri for personal, family, or household purposes within the applicable statute of limitations period.

26. Excluded from each Class or Sub-Class is Defendant, including any parent, subsidiary, affiliate or controlled person of Defendant; Defendant's officers, directors, agents or employees; the judicial officers assigned to this litigation; and

9

members of their staffs and immediate families. Also excluded from the Class or Sub-Class are those claiming they have suffered a personal injury as result of the Defective Product.

27. The proposed Nationwide Class or Missouri Sub-Class meet all requirements for class certification. The Class or Sub-Classes satisfy the numerosity standards. The Class or Sub-Classes are believed to number in the thousands of persons. As a result, joinder of all Class or Sub-Class Members in a single action is impracticable. Class or Sub-Class Members may be informed of the pendency of this Class Action by published and broadcast notice.

28. There are questions of fact and law common to the Nationwide Class or Missouri Sub-Class which predominate over any questions affecting only individual members. The questions of law and fact common to the Class or Sub-Class arising from Defendant's actions include, without limitation, the following:

     a. Whether the shelf life or expiration date of the abrasive wheel is a material fact in the purchasing of abrasive wheel products such as the Defective Product sold by Defendant;

     b. Whether, in marketing and selling the Defective Product, Defendant failed to disclose the dangers and risks of the Defective Product;

10

c.    Whether Defendant failed to disclose and/or concealed the material fact that the Defective Product had a shelf life or expiration date;

d.    Whether Defendant failed to warn adequately of the dangers of using the Defective Product after its expiration date or shelf life;

e.    Whether Defendant knew or should have known that using the Defective Product after its expiration date or shelf life can cause it to fail and lead to serious injuries;

f.    Whether Defendant adequately tested the Defective Product prior to distribution and sales in the market place;

g.    Whether Defendant continued to manufacture, market, distribute, and sell the Defective Product notwithstanding its knowledge of the products' dangerous nature and risks of expiration;

h.    Whether Defendant knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of the Defective Product from the consuming public; and/or

i.    Whether Defendant's conduct violated Missouri's Merchandising Practices Act.

29.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations

11

of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

30. A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members or Sub-Class Members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Nationwide Class Members or Missouri Sub-Class Members to protect their interests.

31. The claims of Plaintiff are typical of the claims of members of the Nationwide Class and the Missouri Sub-Class. The labels and packaging of products purchased by Plaintiff were identical to the labels and packaging of products purchased by Nationwide Class and Missouri Sub-Class members. Based upon information and belief, none of the abrasive wheel products sold by Defendant provided a clearly identified expiration date on the label or packaging of the product. Therefore, the information provided by Defendant to Plaintiff and all Nationwide Class or Missouri Sub-Class members was identical.

32. Plaintiff is an adequate representative of the Nationwide Class and Missouri Sub-Class because he is a member of both Classes and his interest does not conflict with the interests of the members of the Nationwide Class or Missouri Sub-Class he seeks to represent. The interests of the members of the Nationwide Class or Missouri Sub-Class will be fairly and adequately protected by the Plaintiff and their

12

undersigned counsel, who have extensive experience prosecuting complex class action litigation.

33. Plaintiff seeks a refund of monies paid as a result of his purchase of the Defective Product, that occurred following Defendant's wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of the Defective Product.

34. Plaintiff specifically excludes from this class action any damages, losses, or other relief of any kind arising from the personal injuries suffered by those class members personally injured by the Defective Product because it failed when used after the expiration date. This class action seeks only the economic and injunctive relief requested herein to which class members are entitled under the Missouri Merchandising Practices Act and other claims pled.

35. Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the Nationwide Class or Missouri Sub-Class who suffered harm to bring a separate action since the Defective Product costs less than ten dollars individually. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Nationwide Class Members or Missouri Sub-Class Members.

13

36.    Class action treatment of the claims in this action is the superior method of resolution with respect to concerns of efficiency, fairness and equity over other available methods of adjudication.

37.    Class action treatment is appropriate in this case because Defendant acted, or refused to act, in a manner that was generally applicable to – and often identical to – grounds that are applicable to each member of the Nationwide Class or Sub-Class.  All members of the Nationwide Class or Missouri Sub-Class received the same information provided on the labels and packaging of the Defective Products sold by Defendant.

38.    Notice can be provided to Class Members or Sub-Class Members by using techniques and forms of notice similar to those customarily used in other defective-product cases and complex class actions.

## CLAIMS FOR RELIEF

## COUNT I – VIOLATION OF THE MISSOURI MERCHANDISING PRACTICE ACT

39.    Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

40.    The acts and practices engaged in by Defendant, and described herein, constitute unlawful, unfair and/or fraudulent business practices in violation of the Missouri Merchandising Practices Act, Mo. Ann. Stat. §§ 407.010 *et seq*.

41.    Defendant engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of

14

material facts—specifically, the failure to include a clear expiration date—in connection with the sale, distribution or advertisement of the Defective Product violation of Mo. Rev. Stat. § 407.020.

42. Plaintiff purchased the Defective Product, a product that was falsely represented, as stated above, in violation of the Missouri Merchandising Practices Act and as a result Plaintiff suffered economic damages in that the product he purchased was worth less than the product he thought he had purchased had Defendant not omitted material facts. Plaintiff, and other reasonable consumers, had no information to suggest that the Defective Product had an expiration date that, after which, the product would become worthless due to the risk of harm from giving way, cracking, splitting, exploding, or failing with reasonably anticipated use.

43. Plaintiff and the Missouri Sub-Class acted as reasonable consumers would in light of all circumstances.

44. Defendant's actions and omissions would cause a reasonable person to enter in the sale and transaction that resulted in damages to Plaintiff and the Missouri Sub-Class.

45. As a result of Defendant's actions and omissions, Plaintiff and the Missouri Sub-Class suffered economic damages that can be calculated with a reasonable degree of certainty, including a refund of the monies paid as a result of their purchases.

15

46. Plaintiff and the Missouri Sub-Class also seek injunctive relief, enjoining Defendant from selling the Defective Product without a clear and unambiguous expiration date.

47. At the time of Defendant's design, manufacture, processing, distribution, sale and/or use of the Defective Product, Defendant knew of the dangerous condition of said product and supplied it with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendant specifically placed profits ahead of the health and safety of others by intentionally omitting and concealing material facts about the Defective Product's expiration date. Defendant's conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiff and the Missouri Sub-Class.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages in excess of the jurisdictional limit as determined at trial, injunctive relief, for the costs of this action, attorney's fees, and for such further relief as the Court deems fair and reasonable.

## COUNT II – UNJUST ENRICHMENT

48. Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

16

49.     Plaintiff and the Nationwide Class and/or Missouri Sub-Class members purchased products from the Defendant that they would not have purchased had they known that the products, when used as anticipated, crack, split, explode and fail.

50.     The Defendant was therefore unjustly enriched at the expense of and to the detriment of the Plaintiff and the Class.

51.     Plaintiff and the Nationwide Class and/or Missouri Sub-Class are therefore entitled to restitution from the Defendant, and seek an order requiring the Defendant to disgorge all profits, benefits and other compensation the Defendant obtained from the sale of these products.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT III -- STRICT LIABILITY IN TORT -- DESIGN DEFECT

52.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

53.     Defendant manufactured and/or supplied the Defective Product in question within the ordinary course of its business.

54.     Plaintiff purchased the Defective Product. The Defective Product failed to warn Plaintiff that it expired, and that if used as reasonably anticipated after the expiration date it was at a substantial risk of cracking, exploding, and injuring Plaintiff and the Nationwide Class and/or Missouri Sub-Class members.

17

55.     Defendant knew or should have known of the dangerous nature of the Defective Product and its likelihood to fail at the time of its design, manufacture, sale, testing, transportation, distribution, supply, and use.  Notwithstanding, Defendant failed to take safety precautions to prevent economic injury to Plaintiff and failed to warn and/or instruct Plaintiff and others of the defective and unreasonably dangerous nature of said product, including the failure to place a clear expiration date on the label, instructing Plaintiff and consumers not to use after the expiration date.

56.     Defendant's defective and unreasonably dangerous product directly and proximately caused economic injuries to Plaintiff and the Nationwide Class and/or Missouri Sub-Class members.

57.     Defendant's product was used in the manner reasonably anticipated by Defendant and installed per Defendant's instructions.

58.     At the time of the design, manufacture, processing, packaging, distribution, sale and/or use of Defendant's product, said product was defective as designed because of its propensity, among other things, to crack, split, warp, splinter, explode and otherwise fail if used after the expiration date, resulting in injury.

59.     As a result of Defendant's product's propensity to cause injury, as described above, Defendant's product was unreasonably dangerous and defective when put to the use anticipated by Defendant.

60.     As a direct and proximate result of the dangerous and defective condition of Defendant's product and Defendant's failure to warn of the dangers thereof, Plaintiff and the Nationwide Class and/or Missouri Sub-Class members have suffered economic injuries.

61.     At the time of Defendant's design, manufacture, processing, distribution, sale and/or use of the Defective Product, Defendant knew of the dangerous condition of said product and supplied it with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendant specifically placed profits ahead of the health and safety of others by intentionally omitting and concealing material facts about the Defective Product's expiration date. Defendant's conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiff and the Nationwide Class and/or Missouri Sub-Class.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## **COUNT IV – STRICT LIABILITY IN TORT -- FAILURE TO WARN**

62.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

19

63. Defendant designed, manufactured, processed, packaged, distributed, marketed, sold and supplied, and labeled the Defective Product at issue, without including and/or making adequate instructions on the use of the product to reduce and/or eliminate the dangerous components thereof, and/or without warnings that the Defective Product expires and that it would crack, split, splinter, warp, explode and otherwise fail and become dangerous and cause injury.

64. As a result of Defendant's failure to adequately instruct on use, including the expiration date, and/or avoidance or to warn of the dangerous characteristics of the product, said product was defective and unreasonably dangerous when put to the use reasonably anticipated by Defendant.

65. As a direct and proximate result of the dangerous and defective condition of Defendant's product and Defendant's failure to instruct and/or warn of the dangers thereof, Plaintiff and the Nationwide Class and/or Missouri Sub-Class members have suffered economic injuries.

66. At the time of their design, manufacture, processing, packaging, distribution, marketing, sale, supply and/or use of the Defective Product at issue, Defendant knew of the dangerous condition of said product and supplied it with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendant specifically placed profits ahead of the health and safety of others by intentionally omitting and concealing

20

material facts about the Defective Product's expiration date. Defendant's conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiff and the Nationwide Class and/or Missouri Sub-Class members.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT V -- NEGLIGENCE

67.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

68.     Defendant designed, manufactured, distributed, tested, sold, applied, used and/or supplied the Defective Product at issue.

69.     Defendant held itself out as a corporation capable of reasonably and prudently developing, manufacturing, marketing, supplying, testing, distributing, applying, using, supplying, and selling the Defective Product at issue and therefore had the duty to have and exercise the knowledge of an expert on such product.

70.     Defendant knew or should have known that the Defective Product created an unreasonable risk of bodily harm, including the risk of breaking and exploding causing serious and catastrophic injuries.

71.     As designers, manufacturers, processors, packagers, distributors, marketers, sellers, users, appliers and suppliers of the Defective Product at issue, Defendant had a duty to exercise due care and the ordinary, reasonable and technical

21

skill and competence that is required of designers, manufacturers, processors, packagers, distributors, marketers, sellers, suppliers, and others in a similar situation, including, without limitation, the duty to test its products; the duty to acquire and maintain the knowledge of an expert; the duty to design, manufacture, process, distribute, market, sell, and/or supply its product free from defects and/or latent defects; the duty to adequately warn of product defects and/or hazards, which duty continued even after the sale of said products; and the duty to market, advertise, sell and supply products with adequate information and warnings about the risk of failure and propensity to cause serious injuries.

72.    Defendant failed to use due care under the circumstances and thereby breached its duties as set forth above and was careless and negligent in the performance of its said duties to Plaintiff and the Nationwide Class and/or Missouri Sub-Class members.

73.    As a direct and proximate result of the dangerous and defective condition of Defendant's products and Defendant's failure to warn of the dangers thereof, Plaintiff and the Nationwide Class and/or Missouri Sub-Class members have suffered economic injuries.

74.    At the time of Defendant's design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the Defective Product at issue, Defendant knew of the dangerous condition of said products and supplied them with deliberate and/or intentional disregard for not making any warning, instruction,

or other precaution to prevent injuries and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendant specifically placed profits ahead of the health and safety of others by intentionally omitting and concealing material facts about the Defective Product's expiration date. Defendant's conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiff and the Nationwide Class and/or Missouri Sub-Class members.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT VI – BREACH OF IMPLIED WARRANTY

75.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

76.     Defendant is a merchant with respect to the sale of the Defective Products purchased by Plaintiff.

77.     Defendant, by selling the Defective Products, impliedly warranted that the product was merchantable with respect to goods of that kind.

78.     Defendant sold the Defective Product to Plaintiff through a retail store location, Menards, in Sedalia, Missouri.

79.     The Defective Product sold by Defendant to Plaintiff did not conform with the implied promises made with respect to the labels and packaging that accompanied the product.  Specifically, by failing to include a clearly identified

expiration date, Defendant implied that the Defective Product had no expiration date or shelf life upon which after such expiration date or shelf life, the product could not be safely used.

80.     As a result of the failure to provide a clearly marked or identified expiration date on the Defective Product or its packaging, the Defective Products were not merchantable and Defendant breached its implied warranty of merchantability with respect to the Defective Products.

81.     Had Plaintiff known that the Defective Products had an expiration date or shelf life, they would not have purchased them or would have paid significantly less for the product. As a result of Defendant's breach of implied warranty, Plaintiff, and the Nationwide Class and/or Missouri Sub-Class members have suffered economic injuries.

82.     Defendant was provided notice by receipt of demand made by Plaintiff on behalf of himself and the putative class through the filing of this Complaint and through the mailing of a preservation letter. In addition, Defendant has actual notice of the defect.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

a. That the Court enter an order certifying the Class, appointing Plaintiff as a representative of the Nationwide Class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Nationwide Class;

b. Alternatively, that the Court enter an order certifying the Missouri Sub-Class, appointing Plaintiff as a representative of the Missouri Sub-Class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Missouri Sub-Class;

c. For a judgment against Defendant for the causes of action alleged against it;

d. For damages in an amount to be proven at trial;

e. For appropriate injunctive relief, enjoining the Defendant from selling the Defective Product and ordering it to warn consumers that the Defective Product expires;

f. For attorney's fees;

g. For Plaintiff's costs incurred; and

h. For such other relief in law or equity as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated June 16, 2022

Respectfully submitted,

HUMPHREY, FARRINGTON, & McCLAIN, P.C.

*/s/ Paul D. Anderson*
Kenneth B. McClain MO Bar #32430
Paul D. Anderson MO Bar #65354
Jonathan M. Soper M) Bar #61204
221 W. Lexington, Suite 400
Independence, Missouri 64050
Telephone:   (816) 836-5050
Facsimile:   (816) 836-8966
kbm@hfmlegal.com
pda@hfmlegal.com
jms@hfmlegal.com
Attorneys for Plaintiff and the Putative Classes

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed via the Court's electronic filing system this 16th day of June, 2022.

*/s/ Paul D. Anderson*
**ATTORNEY FOR PLAINTIFF**