IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MELVIN LAMPTON JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SAINT GOBAIN ABRASIVES, INC., ) <br> ) <br> Defendant. ) | No. 4:22-cv-398-GAF |

## ORDER GRANTING FINAL APPROVAL

Before the Court are Plaintiff Melvin Lampton's unopposed motion for final approval of class action settlement ("Final Approval Motion") (Doc. 56), and Class Counsel's motion for attorney's fees, costs, expenses and service award ("Fee Motion") (Doc. 52-53). For the reasons detailed herein, the Court **GRANTS** both motions, enters final judgment for the Settlement Class, and dismisses the Action with prejudice.

**I.     Background**[1]

This is a consumer class action involving organic bonded abrasive wheels ("Covered Products"). Plaintiff alleged that Defendant Saint Gobain Abrasives, Inc. ("Defendant") supplied and sold Covered Products that were defective because they failed to inform consumers that the Covered Products have a shelf life. On February 1, 2024, the Court entered an order preliminarily approving the Parties' Agreement, which would operate as a nationwide settlement of this Action, and directed that notice be given to the Settlement Class members. (Doc. 49.) In addition, the Court appointed Plaintiff's counsel, Humphrey, Farrington & McClain, PC, as Settlement Class Counsel,

---

[1] This Order incorporates the definitions of the settlement agreement ("Agreement") (*see* Doc. 48-1, Exhibit 1, at 7-45) for capitalized terms, unless stated otherwise.

1

and appointed Simpluris as the Settlement Administrator to perform and execute the Court-approved Notice Program.

Pursuant to the Court's Preliminary Approval Order, the Settlement Class was notified of the terms of the proposed settlement and of a Final Approval Hearing to determine, *inter alia*, whether the terms and conditions of the Agreement are fair, reasonable, and adequate for the release and dismissal of the Released Claims against the Released Parties as contemplated in the Agreement, and whether judgment should be entered dismissing the Action with prejudice. The Court-approved Notice Program was commenced, and notice was issued to members of the Settlement Class via Email Notice and widespread internet notice. The Settlement Administrator also established a settlement website. Plaintiff filed a Motion for Final Approval on May 15, 2024. The Court held a Final Approval hearing on May 29, 2024.

## II.    Final Approval Motion

In granting preliminary approval, the Court was well informed in concluding it was likely that the Court would be able to approve the Agreement and certify the Settlement Class. No Settlement Class members opted-out, and no Settlement Class members objected. The Court has considered Plaintiff's Final Approval Motion and the supporting documents, and now confirms that the Agreement meets the requirements for approval and that the Settlement Class meets the requirements for certification.

### A.  Class Certification

The Settlement Class is defined as follows:

> [A]ll Persons who purchased one or more Covered Products at a retail location in the United States and its territories during the Class Period for personal, family, or household purposes. Excluded from the Settlement Class are: (i) all Persons who purchased or acquired the Covered Products for commercial or business purposes, or resale; (ii) Defendant and its employees; (iii) any Person who properly and timely opts out pursuant to this Agreement; (iv) federal, state,

and local governments (including all agencies and subdivisions thereof (but employees thereof are not excluded)); and (v) any judge who presides over the consideration of whether to approve the settlement of this class action and any member of their immediate family.

To certify a Settlement Class for the purposes of the settlement the Court must conclude that the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are satisfied. *See* Fed. R. Civ. P. 23. In this case, the Court finds that each element of Rule 23(a) and Rule 23(b)(3) are satisfied and that final approval is warranted.

As to the requirements under Rule 23(a), the Court finds first that the Settlement Class is "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class is sufficiently numerous, evidenced in part by the fact that Defendant sold more than four million bonded abrasive wheels through third-party distributors and retailers in 2022. Joinder is thus impracticable. Second, the Court finds that there is at least one "question[] of law or fact common to the class." Rule 23(a)(2); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[E]ven a single common question will do," so long as that question "will resolve an issue that is central to the validity of each one of the claims in one stroke") (cleaned up). Third, the Court finds that the claims or defenses of the representative plaintiff are typical of those of the Settlement Class under Rule 23(a)(3), particularly to the extent that the named plaintiff's claims "arise[] from the same event or course of conduct as the class claims, and give[] rise to the same legal or remedial theory." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1039 (8th Cir. 2018); *In re Pre-Filled Propane Tank Antitrust Litig.*, 14-0984-MD-W-GAF, at *8 (W.D. Mo. June 18, 2020). More specifically, Plaintiff's claims and the claims of the Settlement Class arise from the same event or course of conduct: Settlement Class members purchased a Covered Product that did not conform to the promise or affirmation of fact on the packaging or in the marketing vis-à-vis the shelf-life of the Covered Product. Each of the Covered Products purchased by the Settlement

3

Class members suffers the same alleged defect – the lack of a clear shelf-life date. As a result, each Settlement Class member suffered the same financial or economic harm – that the Covered Products were worth less than the actual sale price and therefore they did not receive their benefit of the bargain. Fourth, the Court finds that the "the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4). In so doing, the Court specifically notes that it does not find any conflicts of interest between the named Plaintiff and the class he seeks to represent. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Next, as to Rule 23(b), the Court finds that common questions of law and fact predominate because the common question on the breach of implied warranty is whether the alleged defective Covered Product renders the bonded abrasive wheel unmerchantable. That answer can be proven through class-wide proof since named Plaintiff and the class alleged that all Covered Products suffer from the safe defect, as described above. Moreover, the Court also finds that a class action is superior to individual lawsuits as such individualized litigation would be burdensome and less efficient.

For these reasons, the Court certifies the Settlement Class, appoints Plaintiff to act as the Settlement Class Representative, and appoints Settlement Class Counsel to represent the Settlement Class.

### B. Class Notice

Next, the Court confirms the Notice Program was implemented in accordance with the Court's February 1, 2024, preliminary approval order. (Doc. 49 at pp. 5-6.) The Court further confirms its prior findings that the Notice Program is the best notice practicable under the circumstances, including individual notice to Settlement Class members who can be identified through reasonable effort, and fully complies with the Federal Rules of Civil Procedure. The

4

Notice Program is reasonably calculated under the circumstances to apprise Settlement Class members of the pendency of this Action and the terms of the Agreement, including their right to object to the Agreement and to opt-out and exclude themselves from the Settlement Class.

In short, the Notice Program meets, and have met, the requirements of Rule 23(c) and the Due Process Clause of the United States Constitution.

### C. Approval of the Settlement

To approve a settlement under Rule 23(e), the Court must find that the settlement is "fair, reasonable, and adequate." In doing so, the Court considers various listed factors under Rule 23(e), including the merits of Plaintiff's case weighed against the Agreement terms, Defendant's financial condition, the complexity and expense of further litigation, and opposition to the settlement. *See Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).

As suggested above, members of the Settlement Class have responded positively to the settlement. There has been no objection to the Agreement. And no member of the Settlement Class has opted-out. Plaintiff and Settlement Class Counsel have adequately represented the Settlement Class as reflected by the active and vigorous litigation, including extensive briefing and a Rule 30(b)(6) deposition. This work culminated in the hard-fought Agreement that resolves these claims nationwide. The Agreement achieved here was the product of arm's-length negotiations through two mediation sessions before a well-respected mediator.

Moreover, the Settlement Fund – $1,600,000 – is significant in light of the costs, risks, uncertainties, and delay of further litigation in the course of trial, and appeal. The significance of this settlement is highlighted by previous decisions issued by various federal courts, including this Court, in similar bonded abrasive wheel class actions brought by plaintiff's counsel against other defendants, which were at times favorable to the opposing sides. The settlement proceeds will be

5

distributed among Settlement Class members equitably and relative to one another, primarily in proportion to the number of Covered Products they purchased and the proof establishing same. More still, the injunctive relief obtained in this Action is significant in that Settlement Class Counsel negotiated relief that obligates Defendant—despite there not being a federal or state mandate—to change their labeling and provide a warning to future consumers about the products' shelf life. According to Settlement Class Counsel's expert, the injunctive relief is valued at over $44 million. (Doc. 53-2 at 1-10.) For these reasons and after careful consideration, the Court finds that the Settlement is fair, reasonable, and adequate, and that each of the factors listed in Rule 23(e) and otherwise identified by the Eighth Circuit supports final approval of the Agreement. The Agreement is therefore approved.

### D. Releases

As of the Final Effective Date, the Releasing Parties shall be deemed to waive and release and absolutely and forever discharge Defendant and all Released Parties from any and all Released Claims.

As set forth in the settlement agreement, "Releasing Parties" means and refers to the members of the Settlement Class and its agents, attorneys, partners, joint venturers, affiliates, predecessors, successors, spouses, heirs, assigns, insurers, and any other Persons or entities claiming by or through the Settlement Class, in their capacities as such.

"Released Parties" means and refers to Defendant and its and its related entities including, but not limited to, current and former parent, subsidiaries, and/or related companies, their successors and assigns, and all of their current and future owners, members, managers, officers, directors, shareholders, agents, insurers, affiliates, representatives, employees, attorneys,

principals, partners, joint ventures, and entities, and their agents, guardians, successors, assigns, heirs, executors, and administrators.

"Released Claims" means and refers to any claim, liability, right, demand, suit, matter, obligation, lien, damage, punitive damage, exemplary damage, penalty, loss, cost, expense, debt, action, or cause of action, of every kind and/or nature whatsoever whether now known or unknown, suspected or unsuspected, asserted or unasserted, latent or patent, indirect or consequential, which any Releasing Party now has, or at any time ever had, regardless of legal theory or type or amount of relief or damages claimed, which: (i) in any way arises out of, is based on, or relates in any way to representations or omissions pertaining to the expiration date, shelf-life, best if used by date or other date on or regarding the Covered Products, including how the date is determined, its length, and/or what that date means, or the effects of the passage of time as it relates to the Covered Products and potential alleged risks to consumers arising out of that passage of time; and/or (ii) is asserted in the Complaint filed in this Action. However, Released Claims shall not include any claims for personal injury.

### E. Dismissal and Continuing Jurisdiction

The Court hereby dismisses this Action with prejudice except the Court retains jurisdiction over this Action and the Parties, attorneys, and Settlement Class members for all matters relating to this Action, including (without limitation) the administration, interpretation, and effectuation or enforcement of the Agreement, this Order, and the contemporaneously entered Final Judgment. The Settlement Class Representative and Settlement Class members are permanently enjoined from filing, prosecuting, maintaining, or continuing litigation based on or related to the Released Claims. This permanent bar and injunction are necessary to protect and effectuate the Agreement,

this Order, and this Court's authority to effectuate the Agreement, and is ordered in aid of this Court's jurisdiction and to protect its judgments.

## III. Fee Motion

Plaintiff filed a motion for attorney's fees, reimbursement of expenses, and service award to the named Plaintiff on April 2, 2024. (Doc. 52-53.) Plaintiff requests three awards be paid from the Settlement Fund, as follows: (1) attorney's fees in the amount of $454,433.27; (2) reimbursement of litigation costs and expenses in the amount of $25,566.73; and (3) a service award to Plaintiff in the amount of $10,000. (Doc. 52.) Defendant does not object and filed no response.

### A. Attorney's Fees

Under Federal Rule of Civil Procedure 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." As the Supreme Court has recognized, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In considering whether an attorney's fee award is reasonable, the Court may, in its discretion, look to a "lodestar" methodology or "percentage-of-recovery" methodology. *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865 (8th Cir. 2017). The former looks to the hours of attorney-work in the case multiplied by a reasonable hourly rate "which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Id.* (citation and quotation marks omitted). The latter awards a percentage or "some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Id.* (citation and quotation marks omitted). In the Eighth Circuit, "use of a percentage method of awarding attorney fees in a common-fund case is not only

8

approved, but also 'well established.'" *In re Xcel Energy, Inc., Sec'y, Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)).

Under either methodology, the touchstone for an award of attorney's fees is whether the award is ultimately reasonable. The Eighth Circuit has explained that in evaluating the reasonableness of an award of attorney's fees, the Court should consider what is often referred to as the "*Johnson* factors," including: (1) the time and labor required; (2) the novelty and difficulty of the questions involved in the litigation; (3) the legal skills required; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances of the matter; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *In re Target Corp. Customer Data Sec'y Breach Litig.*, 892 F.3d 968, 977 & n.7 (8th Cir. 2018) (citations and quotation marks omitted); *see also League of Women Voters of Mo. v. Ashcroft*, 5 F.4th 937, 941 (8th Cir. 2021) (explaining that the district court considers the *Johnson* factors that are "relevant to this litigation") (citation and quotation marks omitted).

Here, Settlement Class Counsel seeks an award of $454,433.27. This is less than 29% of the Settlement Fund ($1,600,000), which is well within the range of reasonableness, and in accordance with longstanding Eight Circuit precedent. *See e.g., Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (collecting cases showing that Eighth Circuit courts "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions"). When the value of the injunctive relief is considered (more than $44,000,000, according to Plaintiff's forensic accountant), the requested fee is imminently reasonable. *See Tuter v. Freud*

*America, Inc.*, Case No 22-cv-282-RK, Doc. 65 (W.D. Mo. Jan. 17, 2024) (approving fee request of $492,650.75 in similar class action settlement with injunctive relief). As indicated above, the Settlement Class unanimously supports the requested attorney's fee award, as there were no objections filed.

Working on a contingency-fee basis and taking on the risk of a novel and contested litigation, Settlement Class Counsel received an excellent outcome on behalf of the class. In light of the time, effort, skill, and expertise exhibited by Settlement Class Counsel in the course of litigating this Action, after careful review of the record and submissions in support of the motion and consideration of the relevant law, the Court finds that an award of attorney's fees in the approximate amount of 29% is reasonable and fair. *See, e.g. In re Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving fee award representing 36 percent of the class action settlement fund); *Burnett v. Conseco Life Ins. Co.*, No. 1:18-cv-00200-JPH-DML, 2021 WL 119205, at *9 (S.D. Ind. Jan. 13, 2021) (awarding $9 million in attorney's fees from a $27 million settlement fund); *Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 WL 3859763, at *4 (W.D. Mo. Aug. 16, 2019) (recognizing "Courts in this Circuit and this District have frequently awarded attorney fees of 33⅓%-36% of a common fund") (collecting cases). Therefore, the Court awards Settlement Class Counsel attorney's fees in the amount of $454,433.27.[2]

---

[2] The corresponding lodestar multiplier supports the Court's finding that the requested award is reasonable. *See also Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (recognizing the court may, but is not required to, verify the reasonableness of an award by looking to the lodestar methodology as a crosscheck). Accepting Settlement Class Counsel's lodestar multiplier of 3 based on Settlement Class Counsel's affidavit, *see* Doc. 53 at 9; 53-1 at 4-5, the lodestar multiplier is reasonable and further supports the percentage-based award is reasonable. *See In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (multiplier of 5.61 is not unreasonable); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (finding reasonable lodestar multiplier of 6.96).

### B. Costs and Expenses

Second, under the terms of the Agreement, Settlement Class Counsel may also seek reimbursement of costs and expenses. Settlement Class Counsel has submitted $25,566.73 in costs and expenses. No objections were received to the request for these reimbursements. It is well established that "[r]easonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.'" *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1067 (D. Minn. 2010) (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)). The Court finds these costs and expenses set forth by Settlement Class Counsel in the Fee Motion were reasonably incurred and are reimbursable from the fund. Accordingly, the Court awards Settlement Class Counsel costs and expenses in the amount of $25,566.73.

### C. Service Award

Finally, Plaintiff requests a service award of $10,000. No objections to the service award were submitted. Courts routinely approve service awards to compensate class representatives for the services they provide and the risks they incur on behalf of the class. The factors for deciding whether the service awards are warranted are: "(1) actions the plaintiffs took to protect the class's interests, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing litigation." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017). Here, the Agreement was the product of Plaintiff pursuing this Action and agreeing to serve as the Settlement Class Representative. The Settlement Class Representative actively participated in the litigation, including responding to discovery and ultimately the settlement process. His action was necessary and benefited the entire Settlement

Class in achieving this settlement. Accordingly, the Court awards Plaintiff a service award of $10,000.

**IT IS SO ORDERED.**

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED: May 29, 2024